FILED
2026 Feb-23  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROYAL BRASS, INC.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.:** _____ |
| **JOSEPH E. FIFE, MARK** | ) | |
| **BERTELLA, and MAGIC CITY** | ) | |
| **INDUSTRIAL SUPPLY LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff Royal Brass, Inc., pursuant to Rule 8, FED. R. CIV. P., pleads this complaint against Defendants Joseph E. Fife, Mark Bertella, and Magic City Industrial Supply LLC for their unlawful business competition and breach of contractual and fiduciary obligations to Royal Brass, Inc.  In support of this complaint, Royal Brass, Inc. states as follows:

### PARTIES

1.    Plaintiff Royal Brass, Inc. ("Royal Brass") is a Tennessee corporation with its principal place of business located in Knoxville, Tennessee.  Royal Brass does business as "Royal Brass & Hose."

2.      Defendant Joseph E. Fife ("Fife") is an individual adult resident of Jefferson County, Alabama.  Fife is a member of Magic City Industrial Supply LLC.

3.      Defendant Mark "Nick" Bertella ("Bertella") is an individual adult resident of Jefferson County, Alabama.  Bertella is a member and manager of Magic City Industrial Supply LLC.

4.      Defendant Magic City Industrial Supply LLC ("Magic City" and collectively with Fife and Bertella, "Defendants") is a limited liability company organized under the laws of the state of Alabama.  Magic City is an Alabama citizen because both of its individual members, Fife and Bertella, are Alabama citizens.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction pursuant to 28 U.S.C § 1332 (2026) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action is between citizens of different states.  Complete diversity exists because Royal Brass is a citizen of Tennessee and Defendants are all citizens of Alabama.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 (2026) because a substantial part of the events or omissions giving rise to Royal Brass's claims occurred in this judicial district and because Defendants are all subject to the Court's personal jurisdiction with respect to Royal Brass's claims.

**FACTS**

7.     Royal Brass is an industrial distributor supplying hydraulic and pneumatic components, hoses, fittings, and fasteners for industrial, automotive, and agricultural applications across the continental United States.  Royal Brass also provides custom hose fabrication services.

8.     In November of 2019, Royal Brass acquired a company that was both a competitor and customer, Hardline Fasteners, Inc. ("Hardline").  Hardline was based in Jefferson County, Alabama, and sold similar products to those sold by Royal Brass.  Bertella's father, also named Mark Bertella, owned a significant equity interest in Hardline and was instrumental in its management.  Bertella was a Hardline employee at the time of the acquisition.

9.     After the close of Royal Brass's acquisition of Hardline but also in November of 2019, Royal Brass hired Fife and Bertella as employees.  Both Fife and Bertella had sales roles with Royal Brass.  Fife would later become a sales representative and account manager, and Bertella would later become a regional sales manager for the southeastern United States.  Both Fife and Bertella were tasked with developing business and making sales for Royal Brass in Birmingham, Alabama and the surrounding areas.

10.     Royal Brass invested in extensive training for Fife and Bertella to help them build relationships with existing Royal Brass customers and to expand

relationships with potential customers.  This investment included giving Fife and Bertella access to confidential and commercially valuable information and trade secrets belonging to Royal Brass (the "Confidential Information"), such as customer lists with contact information and details of customers' respective purchasing history, marketing and business strategies for Royal Brass customers, confidential information on Royal Brass suppliers, and Royal Brass pricing information and strategies.

11.    Royal Brass took commercially reasonable steps to protect its Confidential Information, including requiring employees with access to the Confidential Information to execute confidentiality agreements.

12.    To protect its customer relationships carefully developed over decades as well as to protect its investments in Fife and Bertella and the confidentiality of the strategic business information to which they were given access, Royal Brass entered into restrictive covenant agreements with each of them.

13.    On November 15, 2019, Fife and Royal Brass entered into an Agreement Not to Compete and Non-Disclosure of Confidential Information (the "Fife Restrictive Covenant Agreement").

14.    The next day, November 16, 2019, Bertella and Royal Brass entered into an Agreement Not to Compete and Non-Disclosure of Confidential Information (the "Bertella Restrictive Covenant Agreement").  Both the Fife and the Bertella

Restrictive Covenant Agreements (collectively, the "Agreements") are substantively identical in their terms.

15. The Agreements prohibit Fife and Bertella from competing with Royal Brass within 100 miles of Birmingham, prohibit Fife and Bertella from disclosing or otherwise using any Confidential Information belonging to Royal Brass, and require Fife and Bertella to return all confidential information in their possessions to Royal Brass upon the termination of their employment.

16. In addition to the Bertella Restrictive Covenant Agreement and because of his family's former interest in and his employment by Hardline, Bertella also signed a more detailed Employment Agreement with Royal Brass. Bertella's Employment Agreement also prohibits him from competing with Royal Brass in the Birmingham area and from using Royal Brass's confidential and proprietary business information for his own purposes or for any purposes adverse to Royal Brass. Additionally, the Employment Agreement prohibits Bertella from soliciting Royal Brass customers or employees or in any way encouraging Royal Brass customers or employees from ending or adversely changing their relationship with Royal Brass. The Employment Agreement also required Bertella to devote his professional time and energy exclusively to the advancement of Royal Brass's business interests and prohibited him from using his professional time and energy for the advancement of any other business interests, competitive or otherwise.

17.   On June 2, 2025, and without Royal Brass's knowledge, Bertella formed Magic City as a business entity to compete with Royal Brass.  For at least several months, Bertella was working on the formation and development of Magic City as a competitor to Royal Brass while remaining a Royal Brass employee, on its payroll, and subject to the restrictive covenants set out in the Bertella Restrictive Covenant Agreement and the Employment Agreement.  Bertella was also actively engaged in this competitive activity in violation of his fiduciary duty to Royal Brass as its employee.

18.   Upon information and belief, Fife worked with Bertella during 2025 to form and develop Magic City as a competitor to Royal Brass while also remaining a Royal Brass employee, on its payroll, and subject to the restrictive covenants set out in the Fife Restrictive Covenant Agreement.  Fife's competitive activity also violated his fiduciary duty to Royal Brass while its employee.

19.   Throughout the autumn of 2025, Bertella and Fife continued to covertly develop Magic City as a competitor of Royal Brass.  They kept this competitive activity a secret from Royal Brass.

20.   On October 24, 2025, Fife terminated his employment from Royal Brass.  On December 5, 2025, Bertella terminated his employment from Royal Brass. Both did so to focus all of their professional efforts on competing with Royal Brass through Magic City.

21.     Royal Brass later learned that Bertella and Fife were actively soliciting Royal Brass customers during the restrictive periods established by the Agreements and Bertella's Employment Agreement.

22.     While actively soliciting Royal Brass customers through Magic City, Bertella continued to hold himself out as a Royal Brass employee on his LinkedIn page, pictured below:



23.     Fife did the same:



24.    On December 30, 2025, counsel for Royal Brass sent Bertella and Fife letters demanding they immediately cease violating their respective restrictive covenants for the remainder of their restrictive periods.

25.    Bertella and Fife refused to comply with Royal Brass's demands and continue to actively compete with Royal Brass and use its confidential information to their own and to Magic City's benefit at the expense of Royal Brass.

26.    Pursuant to the terms of their respective contracts, Bertella and Fife are liable for Royal Brass's costs and expenses, including legal fees, incurred in the enforcement of their restrictive covenants.

## COUNT I
## BREACH OF CONTRACT – FIFE RESTRICTIVE COVENANT AGREEMENT

27.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

28.    Royal Brass and Fife entered into a contract, namely the Fife Restrictive Covenant Agreement.

29.    Royal Brass did everything the Fife Restrictive Covenant Agreement required it to do, including allowing Fife to be employed or continue his employment with Royal Brass.

30.    Fife, however, breached his obligations under the Fife Restrictive Covenant Agreement.

31.    The Fife Restrictive Covenant Agreement provides that "during the term of [Fife's] employment . . . and within one (1) year of termination of [Fife's] employment," Fife:

> [A]gree[s] not to compete with Royal Brass within 100 miles of Birmingham, directly or indirectly . . . [in] any business selling brass fittings, hydraulic hose, or industrial hose, or in any business competitive with Royal Brass, and will not either directly or indirectly contact, solicit, or attempt to obtain as a customer any person, partnership, corporation, enterprise, or any other business entity which was a customer of Royal Brass during [Fife's] employment.

32.    Fife breached this obligation by, among other actions, competing with Royal Brass through Magic City within 100 miles of Birmingham and soliciting or otherwise seeking business from Royal Brass customers for Magic City.

33.    The Fife Restrictive Covenant Agreement also requires Fife to:

> [K]eep secret and . . . not, anytime, either during employment or any time after that, divulge or otherwise show . . . to any other person, firm, enterprise, corporation, independent contractor or any other entity, or use for personal use, any Confidential Information of Royal Brass.

34.    The Fife Restrictive Covenant Agreement defines "Confidential Information" as "commercially valuable proprietary, confidential and trade secret information which is vital to the success of Royal Brass business."  Without limitation, the Fife Restrictive Covenant Agreement illustrates examples of Confidential Information as "the name, addresses, and other information related to Royal Brass' customers; the marketing needs, habits, and strategies of each of Royal

9

Brass' customers; Royal Brass' pricing schedules, lists, and policies, [and] Royal Brass' sales literature and its sources of supply."

35.    The Fife Restrictive Covenant Agreement further required Fife to "deliver to Royal Brass before leaving its employment any original and copies of all Confidential Information . . . which [Fife] acquired or [had] custody of in connection with [Fife's] work for Royal Brass."

36.    Fife breached these confidentiality obligations by, among other actions, keeping and using Royal Brass's Confidential Information against it and for himself and for Magic City both while Fife was a Royal Brass employee and following the termination of his employment.

37.    Royal Brass has been harmed by Fife's breach of his obligations under the Fife Restrictive Covenant Agreement.  This harm includes but is not limited to Fife's successful solicitation on his own or on Magic City's behalf of more than $100,000 worth of business from Royal Brass customers who were Royal Brass customers during the time of Fife's employment.

WHEREFORE, Royal Brass requests judgment against Fife plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT II
## BREACH OF CONTRACT – BERTELLA RESTRICTIVE COVENANT AGREEMENT

38.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

39.    Royal Brass and Bertella entered into a contract, namely the Bertella Restrictive Covenant Agreement.

40.    Royal Brass did everything the Bertella Restrictive Covenant Agreement required it to do, including allowing Bertella to be employed or continue his employment with Royal Brass.

41.    Bertella, however, breached his obligations under the Bertella Restrictive Covenant Agreement.

42.    The Bertella Restrictive Covenant Agreement provides that "during the term of [Bertella's] employment . . . and within one (1) year of termination of [Bertella's] employment," Bertella:

> [A]gree[s] not to compete with Royal Brass within 100 miles of Birmingham, directly or indirectly . . . [in] any business selling brass fittings, hydraulic hose, or industrial hose, or in any business competitive with Royal Brass, and will not either directly or indirectly contact, solicit, or attempt to obtain as a customer any person, partnership, corporation, enterprise, or any other business entity which was a customer of Royal Brass during [Bertella's] employment.

11

43.     Bertella breached this obligation by, among other actions, competing with Royal Brass through Magic City within 100 miles of Birmingham and soliciting or otherwise seeking business from Royal Brass customers for Magic City.

44.     The Bertella Restrictive Covenant Agreement also requires Bertella to:

[K]eep secret and . . . not, anytime, either during employment or any time after that, divulge or otherwise show . . . to any other person, firm, enterprise, corporation, independent contractor or any other entity, or use for personal use, any Confidential Information of Royal Brass.

45.     The Bertella Restrictive Covenant Agreement defines "Confidential Information" as "commercially valuable proprietary, confidential and trade secret information which is vital to the success of Royal Brass business."  Without limitation, the Bertella Restrictive Covenant Agreement illustrates examples of Confidential Information as "the name, addresses, and other information related to Royal Brass' customers; the marketing needs, habits, and strategies of each of Royal Brass' customers; Royal Brass' pricing schedules, lists, and policies, [and] Royal Brass' sales literature and its sources of supply."

46.     The Bertella Restrictive Covenant Agreement further required Bertella to "deliver to Royal Brass before leaving its employment any original and copies of all Confidential Information . . . which [Bertella] acquired or [had] custody of in connection with [Bertella's] work for Royal Brass."

47.     Bertella breached these confidentiality obligations by, among other actions, keeping and using Royal Brass's Confidential Information against it and for

himself and for Magic City both while Bertella was a Royal Brass employee and following the termination of his employment.

48.    Royal Brass has been harmed by Bertella's breach of his obligations under the Bertella Restrictive Covenant Agreement.  This harm includes but is not limited to Bertella's successful solicitation on his own or on Magic City's behalf of more than $100,000 worth of business from Royal Brass customers who were Royal Brass customers during the time of Bertella's employment.

WHEREFORE, Royal Brass requests judgment against Bertella plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT III
## BREACH OF CONTRACT – BERTELLA EMPLOYMENT AGREEMENT

49.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

50.    Royal Brass and Bertella entered into a contract, namely the Employment Agreement.

51.    Royal Brass did everything the Employment Agreement required it to do, including allowing Bertella to be employed with Royal Brass.

52.    Bertella, however, breached his obligations under the Employment Agreement.

53.     The Employment Agreement provides that "during the Employment Term, the Employee shall devote his full business time and his best efforts, business judgment, skill and knowledge exclusively to the advancement of the business and interests of [Royal Brass]."

54.     Bertella breached this obligation during his employment by Royal Brass by devoting a portion of his efforts not to the advancement of Royal Brass's interest but to those of Magic City.

55.     The Employment Agreement further required Bertella "during his employment with [Royal Brass] or any time thereafter" to not "use, sell, discuss, transfer, disclose or deliver to any person, partnership . . . or other entity any [of Royal Brass's] Proprietary Information or use such Proprietary Information in any way either during the term of employment . . . or any time thereafter . . . without the prior written consent of [Royal Brass]."

56.     Bertella breached these confidentiality obligations by, among other actions, keeping and using Royal Brass's Proprietary Information against it and for himself and for Magic City both while Bertella was a Royal Brass employee and following the termination of his employment.  Bertella did so without Royal Brass's prior written consent.

57.     The Employment Agreement further provides, "During the term of [Bertella's] employment with [Royal Brass] and for a period of one year thereafter,"

14

Bertella "shall not, directly or indirectly . . . participate in any entity engaged in the business of selling fasteners[,] screws, nuts, washers, bolts and other products to industrial and commercial customers anywhere in Jefferson County, Alabama or in any contiguous County thereto in competition with [Royal Brass]."

58.    Bertella breached this noncompete obligation by, among other actions, both directly and indirectly through his participation in Magic City engaging in the prohibited business activities within Jefferson County and its contiguous counties.

59.    The Employment Agreement further provides, "During the term of [Bertella's] employment with [Royal Brass] and for a period of two years thereafter," Bertella "shall not, directly or indirectly . . . (i) call upon any customer or customers of [Royal Brass] for the purpose of soliciting, selling or both" to any Royal Brass customers nor (ii) "influence any of [Royal Brass's] employees to terminate their employment with [Royal Brass] or accept employment with any of [Royal Brass's] competitors."

60.    Bertella breached this solicitation obligation by, among other actions, both directly and indirectly through his participation in Magic City soliciting Royal Brass customers to do business with Magic City and influencing at least one Royal Brass employee to terminate his employment with Royal Brass.

61.    Royal Brass has been harmed by Bertella's breach of his obligations under the Employment Agreement.  This harm includes but is not limited to

Bertella's successful solicitation on his own or on Magic City's behalf of more than $100,000 worth of business from Royal Brass customers who were Royal Brass customers during the time of Bertella's employment and at least one employee from Royal Brass.

WHEREFORE, Royal Brass requests judgment against Bertella plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT IV
## BREACH OF FIDUCIARY DUTIES

62.     Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

63.     As employees of Royal Brass, Fife and Bertella each owed Royal Brass fiduciary duties to act in the best interests of Royal Brass and to avoid actions that sacrificed Royal Brass's interests in favor of their own personal interests or those of another business.

64.     Fife and Bertella breached their fiduciary duties to Royal Brass by, among other actions, unlawfully creating a competing business, Magic City, competing with Royal Brass for customers, and soliciting or influencing Royal Brass customers and employees (as described in more detail above), all while still Royal Brass employees, themselves.

16

65.    Royal Brass has been harmed by Fife's and Bertella's breaches of their fiduciary duties for Magic City's benefit.  This harm includes but is not limited to Defendants' successful solicitation of Royal Brass customers and the other unlawful competition described above.

WHEREFORE, Royal Brass requests judgment against Fife and Bertella plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT V
## INTENTIONAL INTERFERENCE WITH FIFE RESTRICTIVE COVENANT AGREEMENT

66.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

67.    Royal Brass and Fife were parties to a contract, namely the Fife Restrictive Covenant Agreement.

68.    Magic City knew about the Fife Restrictive Covenant Agreement through its agent Bertella.

69.    Magic City was not a party to the Fife Restrictive Covenant Agreement, was not an agent of anyone who was a party to the contract, and had no financial stake in the contract.

70.    Magic City intentionally disrupted or interfered with the performance of the Fife Restrictive Covenant Agreement by facilitating and benefiting from the unlawful competition in violation of the contract described above.

71.    Royal Brass was harmed by Magic City's conduct.

WHEREFORE, Royal Brass requests judgment against Magic City plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT VI
## INTENTIONAL INTERFERENCE WITH BERTELLA RESTRICTIVE COVENANT AGREEMENT AND EMPLOYMENT AGREEMENT

72.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

73.    Royal Brass and Bertella were parties to two contracts, namely the Bertella Restrictive Covenant Agreement and Employment Agreement.

74.    Magic City knew about the Bertella Restrictive Covenant Agreement and the Employment Agreement through its agent Fife.

75.    Magic City was not a party to the Bertella Restrictive Covenant Agreement or Employment Agreement, was not an agent of anyone who was a party to the contracts, and had no financial stake in the contracts.

76.    Magic City intentionally disrupted or interfered with the performance of the Bertella Restrictive Covenant Agreement and Employment Agreement by

facilitating and benefiting from the unlawful competition in violation of the contracts described above.

77.    Royal Brass was harmed by Magic City's conduct.

WHEREFORE, Royal Brass requests judgment against Magic City plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

## COUNT VII
## CIVIL CONSPIRACY

78.    Royal Brass incorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

79.    Defendants agreed and worked together to commit the unlawful business competition described above.

80.    Defendants did so to harm Royal Brass and benefit themselves.

81.    One or more Defendants did some overt act to achieve the unlawful business competition described above.

82.    Defendants' unlawful business competition conduct caused Royal Brass harm.

WHEREFORE, Royal Brass requests judgment against Defendants plus applicable interest, costs, and fees, including attorney fees, as well as any other damages to which Royal Brass is entitled.

Respectfully submitted this the 23rd day of February, 2026.

*/s/ Cason M. Kirby*
Cason M. Kirby
Jemison C. Jones
HOLLAND & KNIGHT LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, AL 35203
Tel.: (205) 226-5706
cason.kirby@hklaw.com
jc.jones@hklaw.com

*Counsel for Plaintiff Royal Brass, Inc.*

## **CERTIFICATE OF SERVICE**

The following Defendants will be served by certified mail:

Joseph E. Fife
5732 Annandale Lane
Irondale, Alabama 35210

Mark Bertella
3500 Clairmont Avenue South, Apt. 213
Birmingham, Alabama 35222

Magic City Industrial Supply LLC
c/o Mark Bertella, Registered Agent
3500 Clairmont Avenue South, Apt. 213
Birmingham, Alabama 35222

*/s/ Cason M. Kirby*
Of Counsel